111  185
112  501
111  185
 54a 593
111  185
 62a 681

111  185
 71a 122
111  185
154   66
111  185
157  384

O'CONNOR, *Appellant*, v. THE CURRENT RIVER RAILROAD COMPANY *et al.*

Division Two, July 1, 1892.

1. **Railroad Lien**: ASSIGNMENT. One cannot enforce a lien against a railroad for work and labor on an account assigned to him prior to the filing of the lien.

2. ———: ———. Such lien cannot be sustained in favor of the lienor as to work done by him, where such work is not distinguishable in the petition from that for which the account was assigned, and for which no lien could be enforced.

3. ———: LIEN UNDER TWO CONTRACTS. Charges for work done for the railroad under two distinct contracts cannot be blended together in one lien.

*Appeal from Carter Circuit Court.*—HON. J. G. WEAR, Judge.

AFFIRMED.

*C. D. Yancey* for appellant.

(1)  The proceeding is to enforce a lien under the provisions of article 4 of chapter 47 of the Revised Statutes of 1879. Section 3207 of the same article prescribes the rules of pleading, practice, process and other proceedings in cases arising under said article; there is no difference between such a petition as this and a petition on an account for goods sold and delivered, excepting only the additional allegations with

reference to the lien. Tried by this standard, the petition is certainly good. (2) The objections urged in the second ground of demurrer, that William O'Connor & Co. were subcontractors under J. S. McTighe & Co., and that O'Connor & Co. sold their interest in the work performed to William O'Connor, it is submitted, do not constitute grounds of demurrer, section 2043, Revised Statutes, 1889; nor does the matter referred to affect the sufficiency of the pleading, section 2039, Revised Statutes. (3) The objections in the fifth paragraph of the demurrer, that the statements of account for work done on various sections of the roadbed are blended in one notice and statement of account and petition, is no ground of demurrer. If the plaintiff has improperly mingled in one count of his petition matters which might be properly set forth in different counts, the remedy is not by way of demurrer, but by motion to elect. *Otis v. Bank*, 35 Mo. 128; *Mulholland v. Ropp*, 50 Mo. 42; 80 Mo. 367.

*Wallace Pratt* and *Olden & Orr* for respondents.

(1) The statute which gives a mechanic a lien is in derogation of the common law, and a lien can be established only by a clear compliance with the requirements of the statute. Jones on Liens, sec. 1587; *Baily v. Johnson*, 1 Daly (N. Y.) 61; *Porter v. Miles*, 67 Ala. 130; *Chafflin v. McFaddin*, 41 Ark., 42; *Belanger v. Hersey*, 90 Ill. 70; *Foster v. Poillon*, 2 E. D. Smith, 556; *Cronkright v. Thomson*, 1 E. D. Smith, 661. (2) The weight of authority seems to be against the right to assign a claim for a lien, before it is perfected under the statute by the party originally entitled thereto. 2 Jones on Liens, secs. 1493-4; *Davis v. Bilsland*, 18 Wall. 659; *Brown v. Harper*, 4 Ore. 89; *Bank v. Day*, 52 Iowa, 680; *Pearsons v. Tincker*, 36 Me.

384; *St. John v. Hall*, 41 Conn. 522; *Ruggles v. Walker*, 34 Vt. 468. (3) The petition fails to allege the filing of any account as to the work done on sections 55 and 56. If the plaintiff is not entitled to assert the lien as assignee, then his whole claim as to defendant railroad company must fall under the authority of: *Murphy v. Murphy*, 22 Mo. App. 18; *Gauss v. Hussmann*, 22 Mo. App. 115; *Blakey v. Blakey*, 27 Mo. 39; *Edgar v. Salisbury*, 17 Mo. 271; *Kershaw v. Fitzpatrick*, 6 Mo. App. 575; *Nelson v. Withrow*, 14 Mo. App. 270.

GANTT, P. J.—This is an action in the circuit court of Carter county to enforce a lien on the Current River railroad for certain work and labor done in the construction thereof.

The petition, omitting caption, is as follows: "The plaintiff states that the defendant is a railroad corporation, duly incorporated and existing under and by virtue of the laws of the state of Missouri, and as such corporation owns and operates a railroad from Willow Springs, in Howell county, to a point called Grandin, in Carter county, Missouri; that the said corporation owns a large lot of rolling stock, depot grounds and buildings, together with the roadbed and right of way through the said counties between the points above named, which are used by the said corporation for its said railroad. Plaintiff avers that the defendant corporation some time prior to the fifteenth day of July, 1887, made a contract with J. S. McTighe & Co., a firm composed at that time of J. S. McTighe and Isaac L. McKee, by which the said McTighe & Co. were to construct and build the roadbed of the said railroad embraced in sections 46, 50, 54, 55, 56, 57 and 60, as shown by profile on file in the office of the clerk of the county court within and for the county of Carter in the state of Missouri; that each of said sections is

one mile long, and all situated in Carter county, Missouri.

"That, after making the said contract, said J. S. McTighe & Co. contracted with Wm. O'Connor & Co., a firm composed of Wm. O'Connor, J. S. McTighe, Isaac L. McKee and M. Holden, by which contract the said Wm. O'Connor & Co. were to grade and build said sections 55 and 56 of said railroad.

"That, in pursuance of said agreement last named, the said Wm. O'Connor & Co. did, on the fifteenth day of July, 1887, begin the work and labor of building and constructing the said railroad bed on said sections 55 and 56, and completed the same on the sixteenth day of April, 1888, and which roadbed on said sections 55 and 56 were by the said railroad company, herein defendant, received and accepted.

"The said defendant corporation by its contract with said J. S. McTighe & Co. agreed to pay to said J. S. McTighe & Co. the following prices for work and labor to be performed in building and constructing said roadbed on sections 55 and 56, viz.: For clearing and grubbing right of way, $32 per acre; for earth excavation, twenty-nine cents per cubic yard; for overhaul, two and five-tenths cents per cubic yard; for loose rock, forty-two cents per cubic yard; for solid rock, ninety-two cents per cubic yard; for ballast, ninety-two cents per cubic yard; for riprap, $1.25 per yard.

"That in the building and constructing said section 55 said firm of Wm. O'Connor & Co. grubbed twelve acres of land at $32 per acre, $380; earth excavation, ten thousand, nine hundred and thirty-five cubic yards, at twenty-nine cents per yard, $3,171.15; overhaul, twenty thousand, seven hundred and thirteen cubic yards at two and five-tenths cents, $517.32; loose rock, four hundred and fifty cubic yards, at forty-two cents, $189; solid rock, ninety-nine hundred and three

cubic yards, at ninety-two cents, $612.72; riprap, thirty-six and five-tenths cubic yards, at $1.25, $45.62; to building county road, $75.

"In building, constructing and grading said section 56, said Wm. O'Connor & Co. cleared and grubbed eleven and three-tenths acres of land, at $32 per acre, $361.66; earth excavation, twenty-seven hundred and seventy-eight cubic yards, at twenty-nine cents, $2,299.12; loose rock, three hundred and five cubic yards, at forty-two cents, $128; solid rock, twenty-six thousand three hundred and sixty-nine cubic yards, at ninety-two cents, $24,259.48; ballast, nine hundred and sixty-three cubic yards, at ninety-two cents, $885.96; sidetrack, five hundred and twenty-seven cubic yards, at twenty-nine cents, $153.41; grubbing sidetrack, $16; clearing Pike Creek, $138.60; total, $42,349.90; credit, $15,186; balance due, $27,163.90.

"That the same prices as above set forth were agreed by J. S. McTighe & Co. to be paid to Wm. O'Connor & Co. for the work and labor to be done.

"That, on the second day of April, 1888, the plaintiff, William O'Connor, of the firm of Wm. O'Connor & Co., aforesaid, purchased all the right, title, debt, demand and interest of the said Wm. O'Connor & Co., and of the said J. S. McTighe, Isaac L. McKee and M. Holden, plaintiffs, partners in the firm of William O'Connor & Co., in and to their right, claim and demand for and on account of the work and labor done on sections 55 and 56, aforesaid, and that plaintiff is now the sole owner of said debt, claim and demand.

"That, prior to the sixteenth day of April, 1888, the said J. S. McTighe & Co. contracted with this plaintiff by which plaintiff was to do the following labor in completing and finishing the roadbed of the said railroad as follows: Section 57, to riprapping one hundred and eighteen yards, at $1.25, $147.50;

section 60, to riprapping two hundred and eight yards, at $1.25, $260; section 54 to riprapping three hundred and thirty-seven yards, at $1.25, $421.25; section 46, to riprapping one hundred yards, at $1.25, $125; section 50, to finishing work on roadbed, $200; total, $1,153.75.

"Plaintiff avers for the purpose of securing a lien on said railroad, that, within ninety days after the completion of said work and labor, aforesaid, he filed in the office of the clerk of the circuit court of Carter county, Missouri, a county through which said railroad is located, verified by his own affidavit, a just and true account of the amount due him by J. S. McTighe & Co., after all just credits had been given, which account stated the amount claimed as due, the general value of the work, the amount of labor performed, the dates when the work and labor was done and performed, the names of the parties with whom the contract for said work was made, viz., the aforesaid J. S. McTighe & Co., and also the said road, the Current River Railroad Company, a corporation organized and existing under and by virtue of the laws of the state of Missouri, against which said lien is intended to apply; that plaintiff within said ninety days did serve a copy of said account on the defendant corporation.

"Plaintiff avers that there is now due him for the work and labor done and performed as hereinbefore stated the sum of $28, 313.65.

"Wherefore plaintiff asks judgment against the defendant corporation for the said sum of $28,313.65, together with interest and costs of suit, and that said amount be declared a lien upon said railroad, against its rolling stock, depot houses and grounds, roadbed, sidetracks, etc., or enough thereof to satisfy said judgment, interest and costs, and for other proper relief."

To this petition defendants filed a demurrer, assigning the following grounds:

"*First.* The petition is vague, indefinite and uncertain, and fails to state a cause of action. *Second.* Because the petition, notice and statement for a lien show that Wm. O'Connor & Co. were subcontractors under J. S. McTighe & Co., and that Wm. O'Connor & Co. sold and assigned all of their interest in and to the work performed on sections 55 and 56 of defendant corporation's road and roadbed to Wm. O'Connor. *Third.* Because the petition, notice and statement for a lien show that Wm. O'Connor is attempting to enforce and establish a lien upon and against defendant corporation's road and roadbed for the labor performed by William O'Connor & Co. *Fourth.* Because the notice and statement of the account for a lien for work and labor performed by William O'Connor & Co. on sections 55 and 56 is not and was not filed by William O'Connor & Co. within ninety days after said work and labor was performed by said William O'Connor. *Fifth.* Because the petition and notice and statement of account, upon which this action is based, show that the work and labor performed by William O'Connor & Co. on sections 55 and 56, and the work and labor performed by William O'Connor on sections 57, 60, 54, 46 and 50 are blended in one notice and statement of account and petition. *Sixth.* Because, under the pleadings, no judgment can be rendered to establish a lien against defendant's road and roadbed in this action. *Seventh.* Because defendant corporation has not had sufficient notice upon which a lien can be established in this action against its road and roadbed."

The trial court sustained this demurrer and plaintiff, declining to plead further, final judgment was rendered for defendants, and plaintiff has appealed.

I.    From the averments in the petition it is evident, that the plaintiff is seeking to enforce a lien on an account for work done by the firm of Wm. O'Connor & Co. up to April 2, 1888, and assigned to plaintiff prior to the filing of his account in the office of the circuit clerk, and giving notice to the defendant railroad.    The right to have and enforce this lien is based on article 4 of chapter 47, Revised Statutes, 1879. Section 3207 prescribes the practice in such cases, and among other things provides "the petition shall allege the facts necessary for securing a lien under this article."

One fact necessary to be alleged is that the plaintiff himself either did the work, or furnished the materials, or that some one who did the work or furnished the materials had filed the account and given the notice *and secured the lien*, and *then* assigned it to plaintiff. This court in *Allen v. Mining & Smelting Co.*, 73 Mo. 688, said: "But whether the assignee can file a lien in his own name, based upon the account assigned, has not been decided by this court.    After the lien has been filed, the debt may be assigned and the assignee * * * may enforce it in his own name." *Jones v. Hurst*, 67 Mo. 568.

The direct point has not since been decided in this court, but has twice arisen in the Kansas City court of appeals in *Griswold v. Railroad*, 18 Mo. App. 52, and *Brown v. Railroad*, 36 Mo. App. 458, and in both instances that court unanimously held that "the lien, giving laborers and materialmen who have performed labor or furnished material upon the roadbed of any railroad in this state, could not be filed by the assignee of such laborer or materialman; that the lien was a personal right given by the statute to the laborer for his own protection, and that the right to create it could not be assigned or transferred."

We think these two decisions properly construed the statute. The statute is in derogation of the common law. The lien exists only in favor of those to whom it is given by the statute, and can be established only by a compliance with its· requirements. The statute did not give it to his assignees, but. to the laborer himself. The great weight of authority is in this direction. 2 Jones on Liens, secs. 1493–4; *Davis v. Bilsland*, 18 Wall. 659; *Brown v. Harper*, 4 Ore. 89; *First Nat. Bank v. Day*, 52 Iowa, 680; *Brown v. Smith*, 55 Iowa, 32; *Pearsons v. Tincker*, 36 Me. 384; *St. John v. Hall*, 41 Conn. 522; *Roberts v. Jacks*, 31 Ark. 597; *Tewksbury v. Bronson*, 48 Wis. 581; *Rollins v. Cross*, 45 N. Y. 766.

Section 6758, Revised Statutes, 1889, a new section, appearing for the first time in the last revision, is a legislative construction of the right to assign these liens, and is clearly limited to the liens that "*have been filed in the clerk's office.*" This section is in harmony with *Jones v. Hurst, supra,* and *Allen v. Mining & Smelting Co., supra.*

Inasmuch then as it appeared on the face of the petition that plaintiff was attempting to enforce a lien on an account assigned to him prior to filing his lien, the circuit court properly sustained the demurrer on that ground.

II.   It being clear that plaintiff cannot sustain his lien on the account assigned him by Wm. O'Connor & Co., is there sufficient data by which that work can be separated from his individual labor so that he can maintain his lien for the latter?

The allegation is that Wm. O'Connor & Co. began this work on the fifteenth of July, 1887, and completed it the sixteenth of April, 1888; that on the second of April, 1888, plaintiff purchased the firm's

interest. A fair construction of this, we think, is that the firm did all the work, though plaintiff on the second of April bought their claim. No dates are given as to any of the work, save the commencement and the finishing. There is no specific statement or itemizing of the work done after April 2, 1888. It seems clear then that as to the work on sections 55 and 56 the labor done by plaintiff himself, after the second of April, and before the sixteenth of April, 1888, cannot be distinguished from the labor done by the firm prior to April 2, for which he has no lien, and, therefore, he has no lien for any part of it. *Blakey v. Blakey*, 27 Mo. 39; *Edgar v. Salisbury*, 17 Mo. 271; *Gauss v. Hussmann*, 22 Mo. App. 115; *Murphy v. Murphy*, 22 Mo. App. 18.

III. The demurrer assigns, in the fifth ground, that the plaintiff cannot maintain a lien because he has blended in one notice and one account the work and labor done by Wm. O'Connor & Co., on sections 55 and 56, with the account for the labor done by himself on sections 57, 60, 54, 46 and 50.

That plaintiff has so joined in one account and one notice and one count in his petition the work done under both of these contracts, is apparent upon the face of the petition. What is the effect of such a commingling? It destroys his lien, because he has mingled in one account the labor performed under two distinct contracts. The statute has been uniformly construed to discountenance such a practice (2 Jones on Liens, sec. 1597; *Stine v. Austin*, 9 Mo. 554; *Vito Viti v. Dixon*, 12 Mo. 482; *Livermore v. Wright*, 33 Mo. 31; *Schmeiding v. Ewing*, 57 Mo. 78; *Fitzgerald v. Thomas*, 61 Mo. 501; *Allen v. Mining & Smelting Co., supra*), and this is the doctrine of many other courts of last resort. It is unnecessary to notice any other

assignments as the action of the circuit court upon these material and vital propositions was correct.

The judgment is affirmed. All of this division concur.