HOOVEN, OWENS & RENTSCHLER CO. v. FEATHERSTONE et al.

(Circuit Court, W. D. Missouri, W. D. January 8, 1900.)

1. ACTION—LEGAL OR EQUITABLE—SUIT TO ENFORCE MECHANIC'S LIEN.
   A suit to enforce a mechanic's lien is essentially one in equity, and, on its removal to a federal court, is properly triable as such, although it was instituted as an action at law, as permitted by the state practice.

2. MECHANIC'S LIEN—WAIVER—RESERVATION OF TITLE.
   A reservation, by one furnishing an engine to be placed in a building, of title to the engine until payment is made, does not amount to a waiver of the right to a mechanic's lien therefor given by statute.

3. SAME—EXTENT OF LIEN—SUFFICIENCY OF DESCRIPTION.
   A subcontractor who furnished an engine which was placed in one of a number of separate buildings previously built, and constituting a packing plant, and which was used only in the manufacture of ice in such building, is not entitled, under the mechanic's lien statute of Missouri, to a lien upon the other buildings of the plant; and where his notice of lien claims a lien upon all, and does not contain a sufficient description to identify the building in which the engine was placed and used, the lien cannot be enforced, even as against such building.

4. SAME—NOTICE—INCLUDING MATERIALS FURNISHED UNDER SEPARATE CONTRACTS.
   A notice of lien filed under the mechanic's lien law of Missouri by a subcontractor, for materials furnished and placed in a building, which specifically states that all the materials mentioned in the account were furnished under one entire contract, will not sustain a lien, where the evidence shows that such materials were furnished under two separate and distinct contracts, made at different times.

This was an action for the enforcement of a mechanic's lien, removed by defendants from a state court.

Meservey, Pierce & German, for plaintiff.

Lathrop, Morrow, Fox & Moore, for defendant Jacob Dold Packing Co.

PHILIPS, District Judge. Both parties have treated this case as an action at law for the enforcement of a mechanic's lien, which is permissible under the state statute. On its removal into this jurisdiction the action would nevertheless be treated according to the system of jurisprudence and rules of practice which obtain in the federal courts. In this court the action to enforce a mechanic's lien is "essentially a suit in equity, requiring specific directions for the sale of property, such as are usually given upon the foreclosure of mortgages and the sale of mortgaged premises." Davis v. Alvord, 94 U. S. 546, 24 L. Ed. 283; Improvement Co. v. Bradbury, 132 U. S. 509, 10 Sup. Ct. 177, 33 L. Ed. 433; Furnace Co. v. Witherow, 149 U. S. 578, 579, 13 Sup. Ct. 936, 37 L. Ed. 853; De La Vergne Refrigerator Mach. Co. v. Montgomery Brewing Co. (C. C.) 46 Fed. 829. Yet, as the case was tried to the court, and the court has found the facts, neither party asking to have the pleadings reformed, and the conclusion of the court not being different, whether it be regarded as an action at law or a suit in equity, no error, perhaps, is predicable by either party of the course of procedure pursued.

The first insistence of the defendant Jacob Dold Packing Company is that the plaintiff waived its right to enforce a mechanic's lien herein by reason of the following provision in its contract with John Featherstone's Sons for furnishing the engine as subcontractor, to wit:

"It is agreed that the engine," etc., "above specified, shall remain our property, as security for the deferred payments, until fully paid for in cash. There are no understandings or agreements outside of this written contract."

It is true, as said by Judge Scott in Gorman v. Sagner, 22 Mo. 139, that:

"Although there may be some distinction between an equitable lien and one expressly given by law, yet there is nothing in the cases hostile to the idea that the lien conferred by the statute may be extinguished by implication arising from the conduct of the parties."

Without indulging in any discursive discussion as to what state of facts might amount to such waiver, as applied to a mechanic's lien, the court is of opinion that such reservation of title in the manufacturer or vendor does not amount to a waiver of the right to file and enforce a mechanic's lien for material thus furnished. Manufacturing Co. v. Smith (C. C.) 40 Fed. 339, 5 L. R. A. 231; Chicago & A. R. Co. v. Union Rolling-Mill Co., 109 U. S. 719, 3 Sup. Ct. 594, 27 L. Ed. 1081.

The second objection made to the lien is more serious. It is predicated of the insufficiency and uncertainty of the description of the property given in the lien, and its extension to other buildings and ground than that on which the improvement was made. The description of the property given in the lien is as follows:

"The four (4) story and basement brick, stone, and frame packing-house building, with composition roof, and all other buildings and improvements connected therewith, or adjacent or adjoining, and used and operated by Jacob Dold Packing Company as a packing-house plant, and situated on the following described premises, to wit: On blocks numbered eighteen (18) and twenty-three (23), West Kansas addition No. one (1) to the city of Kansas (now Kansas City), Jackson county, state of Missouri."

One unfamiliar with the real character and description of the property, known as the "Jacob Dold Packing Company," from the foregoing description would very naturally conclude that it consisted principally of one four-story and basement brick, stone, and frame building, under one roof, situated on two parcels of ground, blocks 18 and 23, in Kansas City, whereas, as the plat in evidence and the facts found show, said blocks 18 and 23 embrace an area of six acres of ground, or more, on which are about 12 buildings, of different stories, no one of which is covered by the description of a "four-story and basement brick, stone, and frame." The machinery in question was furnished for and placed in the building designated as "C" on the plat, which is 177 feet long, 61 feet wide on the west side, and 50 feet wide on the east side, and is a four-story brick, without basement, and without stone in its composition. This building was separated from the adjoining buildings on the south by a fireproof wall, and, as proof of its separation from the building south of it, when it was consumed by fire the partition fireproof wall remained intact, and this building C alone was destroyed. These buildings, many years prior to the erection of this machinery in building C, had been completed and used in connection with the packing business of the defendant. The easterly part of the building south of it, designated as "B" on the plat, was first built, the first two stories of which were of stone, on top of which were two stories of brick; and the west room of this building B was five stories high, built entirely of brick, and not on the same elevation with building C. On the south of this building was originally laid off, on the plat of the city, Eighth street, a part of which is now covered by building B, and a part of which has a covered passageway between building B and the buildings F and A, south thereof, on block 23. On the west side of buildings C and B is another covered passageway, which separates buildings C and B from buildings D and E. Building D is a one-story brick, without basement, used as a boiler house. Building E, south of D, is a four-story brick, with basement, used as a smoke house. And still west of these buildings, on block 18, are smaller houses, some of them entirely detached. Two of them are one-story frame, and one of them a three-story stone, used as a boiler room and pump house, and carpenter shop and tin shop. On block 23, south of the platform line, is a cold-storage warehouse, a four-story brick, and a house of one-story brick, used as a market, and a one-story frame stable; and then still further west are cattle pens, and still further south are hog pens; and in the southeast corner of the lots is a three-story brick building, used as an office. Some of these buildings are entirely separated from others, with vacant spaces between them, with intervening platforms and passageways. As applied to the defendant's property, there was no reason why this lien could not have been limited to building C, in which the machinery furnished by plaintiff was placed and operated, and the land on which it stood. The machinery furnished by the plaintiff was simply an engine for manufacturing ice and cooling the air in part of the buildings. This ice was manufactured alone in building C. The air compressor furnished by John Featherstone's Sons.

rested on the platform outside of the building, and was not even inclosed on its sides, and connected by pipes with the engine, not adhering to the building. The engineer (Ryan) in charge of this machinery testified that the work done by the refrigerating machinery and the engine was making ice, and nothing else, and that the ice manufactured was sold in the city trade, some little of it being used in the plant and for icing cars (that is, cars in which the fresh meats were shipped from the packing house); that there were four ice machines and power engines in this building to refrigerate the building, and a couple of dynamos. While the engine was designed to operate the compressor for cooling the air, this was solely as to the buildings where such cooling was needed. The description (that is, the specific description) given in this lien does not describe the building in which the plant's machinery was placed and used. There was neither stone nor frame work in it, nor a basement beneath it. It is perfectly obvious from the description given in the lien, as also from the contention of plaintiff's counsel at the hearing, that he sought to apply to this case the provisions of section 6729 of the Missouri statutes, respecting mechanics' liens, which is as follows:

"When the improvement consists of two or more buildings united together and situated on the same lot, or contiguous lots, or upon separate buildings upon contiguous lots and erected under one general contract, it shall not be necessary to file a separate lien upon each building for work done or materials furnished in the erection of such improvements."

It is well understood by well-advised lawyers of this state that this addendum to the mechanic's lien law, made in 1879, was enacted to avoid, under certain conditions, the rulings of the state supreme court in cases like that of Fitzgerald v. Thomas, 61 Mo. 499, and Fitzpatrick v. Same, Id. 512, and Lemley v. Steel Co., 65 Mo. 545, in which it was, in effect, held that where material was furnished for the erection or improvement of a number of buildings erected on separate lots, although the lots were contiguous, a separate lien must be filed on the buildings on each lot, for the reason that:

"The lien given by the statute against such building or improvement, and the lot on which it is situated, is for the work and labor done on, and the materials furnished for, that particular building or improvement, and not for work done and materials furnished for the building or improvement upon any other lot; and only that building and lot are to be charged for the lien for which such materials were furnished, and on which such labor has been performed."

Hence section 6729 was enacted, by the very terms of which it is limited to the improvement of two or more buildings united, standing upon the same lot or contiguous lots, and erected under one general contract; that is to say, when the contractor, under a general contract with the owner of the property, furnishes materials for the improvement and erection of a number of buildings, either united or disconnected, standing upon different lots, he may file one lien for the material upon such lots and buildings, without more. But in respect of materials furnished for, or machinery placed in, a particular building or buildings, the law stands just as it did prior to the enactment of this statute, unless it is made to appear that such improvement or machinery enters into, and becomes a

component part of, "a solid block of buildings, consisting of distinct, but connected houses, and covering several lots." This was the case presented in Progress Press-Brick & Machine Co. v. Gratiot Brick & Quarry R. Co., 52 S. W. 401, recently decided by the supreme court of this state, so much relied upon by plaintiff's counsel. This was a decision of the majority of one division of the supreme court of this state. It is to be conceded that the court departed measurably from the postulate laid down in Graves v. Pierce, 53 Mo. 423, and Richardson v. Koch, 81 Mo. 264, reaffirmed in Machine Co. v. Cole, 130 Mo. 8, 31 S. W. 924, which held:

"That the machinery for which a lien may be created must be furnished for a building or improvement made upon the land. That this clearly indicates that the machinery must be such as is used in the erection of a building, which will, when placed in the building, erection, or improvement on the land, become a fixture, and become a part of the realty, or at least such as is necessary in the erection of the improvement to be made," etc.

This later Progress Press-Brick & Machine Co. Case, supra, holds that the lien may extend to the building in which the machinery may subsequently be placed, although it was a completed structure before the machinery was erected, and although the building may not have been originally designed for the use to which the machinery is to be applied. But that case does not disturb the rule established in Fitzgerald v. Thomas, Fitzpatrick v. Same, and Lemley v. Steel Co., supra, except where the case is brought within the remedial provision of section 6729 of the Revised Statutes. The facts in the Progress Press-Brick & Machine Co. Case are wholly different from these at bar. The plant was for the manufacture of pressed brick, and the buildings erected therefor were incomplete, and wholly unadapted to the purpose of their erection, without an engine and a kiln. In order to the completion of the structure, and its adaptation to the use of its construction, the contractor furnished 202,000 hard-pressed bricks for the kiln, and a pressed-brick machine, weighing over 52,000 pounds, permanently attached to the freehold. "The whole plant was used as one plant, and the several parts were necessary to make up the whole plant, which would not be a complete plant with any of the parts omitted." The machinery for conveying the material to this kiln ran and operated throughout the whole structure. The harvested clay was brought from the clay sheds to the hopper, and carried into the machines by lifters; and all the parts "were connected so that the manufacture of the bricks could be carried on in one building, so as not to expose the clay to the elements while in course of manufacture." The whole plant was inclosed on all sides, and throughout the opinion stress is laid upon the fact that the whole collection of buildings was covered by one roof. Without the bricks which went into the construction of the kiln, "the business of making dry pressed brick could not be carried on until the whole plant was completed." As such, the machinery and the brickkiln became constituent parts of the united plant. And therefore the court held that the fact that the buildings extended over several lots did not disentitle the material man to file his lien on the whole plant and the lots on which it rested. In the

case at bar the packing-house plant and buildings had existed and been operated for many years prior to the acquisition of this machinery, and had been operated as a plant after the building in which the machinery was placed and the machinery were consumed by fire. The buildings were not covered by one roof, and in some of the buildings the machinery furnished by the plaintiff performed no function, and sustained no physical relation thereto. The machinery here was not, like that placed in a saw or grist mill or a factory, essential to or as a means for the operation of the plant, and therefore an integral part of the structure. It was principally for the manufacture of an additional supply of ice for use outside of defendant's packing-house business, and for the transportation of fresh meats in cars. And the compressor, as a method for cooling the air in certain rooms, was nothing more than the office performed on a smaller scale by electric fans placed in houses. The defendant's packing establishment was and is divided by Liberty street, principally used for railroad tracks, running north and south. If the entire plant on the west side of this street is subject to this lien, why not that on the east side of the street? The plaintiff insists that it is not to be restrained to the specific description given in the lien filed, to wit, "the four story and basement brick, stone, and frame packing-house plant, with composition roof," because it contains the further statement, "and all other buildings and improvements connected therewith, or adjacent or adjoining, and used and operated by Jacob Dold Packing Company as a packing-house plant." This would be well enough if the lien were filed in the instance contemplated by section 6729 of the Revised Statutes, which, as already shown, cannot apply to this case. This latter description would apply as well to that portion of the plant east of Liberty street. If it be said that the description limited it to the west side of the street, by designating blocks 18 and 23, yet if it was entitled to a lien on this division because it was an integral part of the packing-house plant, regardless of the building in which the machinery was placed or used, there is no escape from the conclusion that the lien could as well have been filed on all the buildings and lands of the defendant used in the packing-house establishment. If this be law, the decisions of the supreme court in 61 Mo. and 65 Mo., supra, were all wrong, which the learned judge in the Progress Press-Brick & Machine Co. Case did not pretend to overrule, or even criticise. And, if this be law, the legislature did a work of supererogation in enacting said section 6729. The express permission given in that section, authorizing one lien to be filed on different lots and different buildings, where the improvement consists in an erection under one general contract, is, by necessary implication, a denial of such a single lien filed under any other circumstances or conditions.

The plaintiff has not asked to have its lien as to the building in which the machinery was located, or any particular buildings, or on any piece of ground, limited thereto. But at the hearing its counsel distinctly stated that he claims to have it enforced against all the buildings and all the grounds covering blocks 18 and 23. No officer, with an execution in his hands containing the description

given in this mechanic's lien, could execute it upon any one building containing such description; and in order to make a sale he would have to sell one building five stories high, and others four stories high, and some three stories, and some one story, constructed of different materials, not covered by one roof, and wholly disconnected, on separate blocks, and to which the things accomplished by the machinery did not extend. To sustain such a lien would, in my judgment, change the statute, and overturn a line of decisions of the supreme court of the state of long standing. The authorities cited by plaintiff's counsel from other states, based upon the phraseology of their statutes, are not applicable.

And what is certainly fatal to this lien is the attempt to put in one lien items of account furnished under two separate contracts. The facts found in this case show two distinct contracts respecting the items of the account for which the lien was filed. After the plaintiff, in fulfillment of its contract, had furnished the machinery complete, and after it had been in use for a considerable time by the defendant, the rocker plates connected with the engine, for which an additional charge of $74.35 is made, of date July 13, 1898, in the account filed with the lien, broke in the use and operation of the machinery by the defendant, for which the plaintiff was not responsible on the ground of having furnished an improper equipment. Thereupon the defendant applied to Featherstone's Sons for new rocker plates, whereat Featherstone's Sons wired the plaintiff to make and furnish the needed parts to the defendant, which was accordingly done; and the plaintiff charged the amount thereof as an additional charge to Featherstone's Sons. This was clearly a separate and distinct contract. Central Trust Co. of New York v. Chicago, K. & T. Ry. Co. (C. C.) 54 Fed. 600. The lien by the plaintiff states specifically that all the materials mentioned in the account were furnished "under one entire contract," and the petition alleges that all the materials were furnished under "one entire, joint contract." This, it seems to the court, is fatal to the lien. In O'Connor v. Railroad Co., 111 Mo. 194, 20 S. W. 18, the court said:

"That plaintiff has so joined in one account and one notice, and one count in his petition, the work done under both of its contracts, is apparent upon the face of the petition. What is the effect of such a commingling? It destroys his lien, because he has mingled in one account the labor performed under two distinct contracts. The statute has been uniformly construed to discountenance such a practice."

In view of the conclusion reached on the foregoing propositions of fact and law, it is not deemed essential to discuss other questions raised by the defendant. It results that the plaintiff cannot recover.