## HENDRIX, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

### St. Louis Court of Appeals, April 26, 1904.

1. **JURISDICTION: Judge of Another Circuit.** The fact that the judge of another circuit appeared and assumed jurisdiction of cases pending in the circuit court of a certain county, in which cases the regular judge was disqualified, is presumptive evidence that he was called there, under section 1678, Revised Statutes of 1899, by the regular judge.

2. ———: ———. The regular judge, before whom a motion for new trial was pending, died before the determination of the motion, a new judge, who had been of counsel in the case and was therefor disqualified, was appointed, and he called in the judge of another circuit to sit in the case. The judge of the other circuit appeared and continued the motion, and, before the next term, the new regular judge resigned and another judge was appointed for the circuit, who was qualified to sit in the case. *Held,* the order calling in the judge of another circuit was superseded and the last appointed judge had jurisdiction to vacate it and to pass on the motion for new trial.

3. **COMMON CARRIERS: Contract of Carriage: Extra Rates.** Where a railway company undertook to carry a car load of cattle from East St. Louis in Illinois to a point in Missouri, loaded the cattle in an unsuitable car and, after carrying them across the river on the bridge of the Terminal Company, returned them to East St. Louis, loaded them in a suitable car and carried them to their destination, it could not charge the shipper for extra freight rate it was obliged to pay the Terminal Company for the extra passages over the river.

4. ———: ———: **Negligence of Connecting Line.** Having contracted to carry the cattle from starting point to destination, the railroad company was as liable to the shipper for negligence, if any, of the Terminal Company as if it owned the whole line.

5. ———: ———: **Breach of Contract by Carrier: Delay in Shipping.** Where a railroad company demanded and received of a shipper the extra charge in addition to the schedule rate approved by the Interstate Commerce Commission, it thereby breached its contract of shipment and could not enforce against the shipper a stipulation that he would stand the loss of any shrinkage occasioned by the delay in transportation; it was liable for any damage caused by its negligent delay in the shipment.

6. ———: **Delay in Shipping: Speculative Damages.** In an action for damages to cattle shipped, caused by the negligent delay of the carrier in shipment, evidence that the cattle looked well when loaded and looked gaunt and bad when unloaded. were salable when loaded and unsalable when unloaded, that they appeared to have shrunk about thirty or thirty-five pounds apiece, was not speculative, but sufficiently definite to submit to the jury the question as to whether, and how much, the shipper was damaged by the delay.

Appeal from Audrain Circuit Court.—*Hon. H. W. Johnson*, Judge.

AFFIRMED.

*Geo. S. Grover* and *Geo. Robertson* for appellant.

(1) The burden is upon the plaintiff in this case to establish negligence of the defendant from which any injury follows. Cash v. Railroad, 81 Mo. App. 109; Plefka v. Knapp, 145 Mo. 316; 2 Joyce on Damages, sec. 1282; Witting v. Railroad, 101 Mo. 641. (2) The court erred in refusing to give defendant's instruction No. 3, because that instruction submitted the true rule of damages as provided for in the contract of shipment. McFadden v. Railroad, 92 Mo. 343; Kellerman v. Railroad, 136 Mo. 177; Wyrick v. Railroad, 74 Mo. App. 406; Hart v. Railroad, 112 U. S. 331; Hutchinson on Carriers (2 Ed. ), sec. 249; Sedgwick on Damages (8 Ed.), sec. 416; Graham v. Bickam, 1 Am. Dec. 328; Harmony v. Bingham, 12 N. Y. 99; Vaughn v. Railroad, 78 Mo. App. 639; Live Stock Com. Co. v. Railroad; 87 Mo. App. 330; Bowring v. Railroad, 90 Mo. App. 324.

*P. H. Cullen* for respondent.

(1)   By section 6 of the Interstate Commerce Act it is made unlawful for a common carrier, after it has established and published its schedule of freight rates as prescribed by the act, to charge a greater or less compensation than is specified in such public schedule, and to do so is a misdemeanor, punishable by fine or imprisonment. Wight v. U. S., 167 U. S. 512; Gerber v., Railroad, 63 Mo. App. 145; Railroad v. Harrison, 119 Ala. 539, 43 L. R. A. 385; Railroad v. Hefly & Lewis, 158 U. S. 98; Missouri R. Co. v. Trinity L. Co., 1 T. C. A. 553; Dillingham v. Fischl, 1 Tex. Civ. App. 546; In re Passenger Tariffs, etc., Wars, 2 Int. C. R. 340; 2 Int. C. C. Rep. 513; Matter of Grand Trunk Co., 2 Int. Co. Rep. 496; 3 Int. Com. C. Rep. 89; U. S. v. Railroad, 43 Fed. 26; U. S. v. Mellen, 53 Fed. 229; Railroad v. Railroad, 2 Int. Com. Rep. 729, 3 Int. Com. C. Rep. 465; U. S. v. Howell, 56 Fed. 21.

BLAND, P. J.—At the June term, 1903, of the Audrain circuit court, the plaintiff recovered a verdict and judgment against the defendant. Timely motions for new trial and in arrest of judgment were filed and were continued over to August, 1903, to which month the June term was adjourned. Prior to August, 1903, Hon. E. M. Hughes, judge of the Audrain circuit court, died and Hon. R. D. Rodgers was appointed his successor. Judge Rodgers duly qualified and held the August term pursuant to the June adjournment. Judge Rodgers having been of counsel in this and a number of other cases pending in the Audrain circuit court, and thereby being disqualified to hear and pass upon the motions in this case for new trial and in arrest of judgment, by agreement of parties, an order was duly made requesting "Hon. J. A. Hockaday, judge of the Ninth judicial cir-

cuit to sit as judge therein and otherwise act as judge in each of said causes, and by agreement of the parties in each of said causes the Hon. J. A. Hockaday, judge of the Ninth judicial circuit of Missouri, is selected to hear and pass upon the motions now pending in each of said causes and otherwise act as judge in each of said causes, and do any and every act in each of said causes that is lawful and proper to be done by a circuit judge."
Judge Hockaday, in pursuance of such request, appeared at the August adjourned term of said court when the following proceedings were had before him in the case of Hendrix v. Railroad:

"Now on this day, August 3, 1903, the Hon. R. D. Rodgers, regular judge of this court, having been of counsel of plaintiff in this cause and by reason thereof disqualified from sitting as a judge therein, requests Hon. John A. Hockaday, judge of the Ninth judicial circuit, to sit as judge herein and otherwise act as judge in this cause, the Hon. E. M. Hughes, judge, who heard this cause, being dead, and by agreement of the parties hereto the Hon. John A. Hockaday, judge aforesaid, is selected to hear and pass upon the motions for a new trial and in arrest of judgment in this cause, and otherwise act as judge in this cause. And now the parties hereto by their attorneys appearing, the motions for a new trial and in arrest of judgment are submitted to the court and the same are continued under advisement until the September term of this court, 1903."

Thereupon the said John A. Hockaday took said motion for new trial under advisement and announced that he would pass upon the same at the approaching September term, 1903, of said Audrain circuit court. But before the September term, 1903, of said court, the said R. D. Rodgers resigned his office as circuit judge of said court, and the Governor of Missouri appointed Houston W. Johnson, as his successor, and the said Houston W. Johnson duly qualified as such judge

and opened and held the September term of said court; and thereupon the said John A. Hockaday refused further to sit in said cause and to pass upon said motion. Thereupon the plaintiff filed a motion to vacate all the orders in said cause, transferring the same to the said John A. Hockaday, and this motion the said Houston W. Johnson, as judge of said court sustained. Said motion to vacate is as follows:

"Now comes the plaintiff and moves the court to set aside and vacate the order heretofore made submitting this cause to Judge John A. Hockaday and for cause says that said cause was submitted to Judge Hockaday because Hon. R. D. Rodgers, who is of counsel, in said cause was appointed judge of this court and as such judge was disqualified to hear said cause and since said matter was submitted to Judge Hockaday, and before the said Judge Hockaday had considered said cause, Judge Rodgers resigned the office of circuit judge, and the Hon. H. W. Johnson was appointed and is now judge of said court and he, the said Johnson, being not disqualified to sit and hear said cause, the Hon. John A. Hockaday declines to entertain jurisdiction of said cause and the plaintiff, therefore, moves the said order be set aside and that the present judge of this court assume jurisdiction and hear and determine said cause."

The order sustaining said motion is as follows:

"Now on this day, November 3, 1903, comes plaintiff, by attorney, and files motion to set aside and vacate the entry heretofore made in this cause, submitting this case to Hon. John A. Hockaday, and now said motion coming on for hearing the parties appearing by counsel and the court having seen and heard said motion and being fully advised, doth sustain said motion and doth order and adjudge that the record entry heretofore made in this cause on the third day of August, 1903, and entered of record in circuit court record Z, at page

156, also page 159, submitting this cause to Hon. John A. Hockaday, judge, be and the same hereby are set aside, vacated and for naught held.''

To which action of the court in sustaining said motion the defendant excepted and saved its exceptions.

Thereupon the said Houston W. Johnson sitting as judge in said cause took jurisdiction of the motion for new trial in said cause and overruled the same; to which action of the court in overruling said motion the defendant excepted and saved its exceptions. The defendant objected to all the actions of said Houston W. Johnson, as judge of said court, in taking jurisdiction of said cause and excepted and saved its exceptions to every one and all of his actions therein, and the defendant was granted an appeal to the St. Louis Court of Appeals, and now prays this court to allow, sign and seal its bill of exceptions, which is accordingly done this twenty-first day of December, 1903.

The defendant appealed and contends that Hon. H. W. Johnson was without jurisdiction to pass upon its motions for new trial and in arrest of judgment and that both motions are yet pending somewhere. It will be observed that the orders made in the Audrain circuit court did not change the venue of this cause from that county to any other county in the Ninth judicial circuit, over which Judge Hockaday presided, but that Judge Hockaday was agreed upon by the parties and requested by Judge Rodgers to hear and pass upon the motions pending in the Audrain circuit court. That there was no intention that the venue of the cause should be removed from Audrain county is not only shown by the orders of the court but is also shown by the fact that the parties did not understand that the case was to be taken from Audrain county, but that Judge Hockaday should appear at the Audrain circuit court and then and there, as special judge, pass upon the motions. After the submission of the motions, and on the coming in of

the regular judge, who was not disqualified to hear and pass upon the motions, Judge Hockaday refused to take any further action in the matter, and the question is, did Judge Johnson thereby become possessed of jurisdiction to set aside the order referring the motions to Judge Hockaday and take jurisdiction over them himself? The request made upon Judge Hockaday was in accordance with section 1678, Revised Statutes 1899, which reads as follows:

"Whenever the judge of any circuit shall be sick, absent, or from any cause unable to hold any term or part of term of court in any county in his circuit, such term or part of term of such court may, by request of the judge, be held by the judge of any other circuit; and at the request of the judge of any circuit, any term of court or part of term in his circuit may be held by the judge of any other circuit, who shall, during the period he shall so act, possess the same powers and be liable to the same responsibilities as the judge of said circuit."

Judge Rodgers, by reason of having been of counsel, was unable to hold that part of the June adjourned term of the Audrain circuit court which was necessary to devote to a hearing of the motions for new trial and in arrest of judgment in this case and in the other causes mentioned in the order requesting Judge Hockaday to act. While the order does not follow the language of the statute, it is clear, both from its contents and from the construction given it by both Judge Hockaday and the parties to this suit, that they so construed it. The mere fact that Judge Hockaday appeared at the Audrain circuit court and then and there heard the motions, is presumptive evidence that he was called there by Judge Rodgers, the regular judge. Riggs v. Owen, 120 Mo. 176. The venue of the cause having never been changed from Audrain county, when Judge Johnson became judge the reason for calling in the judge of an-

other circuit was removed and the order calling him ceased to be operative and was superseded by the coming in of a regular judge who was not disqualified. Dawson v. Dawson, 29 Mo. App. 521; Lacy v. Barrett, 75 Mo. 469; Coles v. Thompson, 27 S. W. 46.

Briefly stated the facts in the case are, in substance, as follows: Plaintiff is a resident of Benton City, Audrain county, Missouri, and a dealer in cattle. On August 19, 1902, he bought at the National Stock Yards, East St. Louis, Illinois, forty-three head of calves and delivered the same to the defendant company at the National Stock Yards to be carried to Benton City and there to be delivered to plaintiff. Plaintiff received from defendant a waybill for the shipment and the cattle were loaded into an unsuitable car and carried by the Terminal Railroad Company, on the afternoon of the same day, over the Merchants Bridge to East Grand Avenue, St. Louis, Missouri, and there placed upon one of defendant's side tracks, but for the reason the car in which the cattle were loaded was an unsafe and improper one, the defendant refused to carry it forward and ordered it taken back to the National Stock Yards. Late in the afternoon of the same day the Terminal Company took the car back to the National Stock Yards where the cattle were unloaded and fed and kept until the afternoon of the next day when they were again loaded, this time in a proper car, and carried to their destination without injury and delivered to plaintiff. By reason of being loaded into an improper car on the thirteenth of August, the cattle arrived at Benton City twenty-four hours later than they would have arrived if they had been loaded into a proper car. Plaintiff alleges that by reason of the delay he paid out one dollar and fifty cents for feed for the cattle at the National Stock Yards, lost one day of his time and was put to an expense of five dollars, that he was compelled to pay eight dollars extra freight on account of the return of

his cattle to the stock yards on August 13, and that the delay and reloading caused them to shrink one hundred pounds each to his damage in the sum of two hundred dollars, for all of which he prayed judgment.

The answer admitted that defendant received the cattle at the National Stock Yards, East St. Louis, and agreed to carry them to Benton City, and alleged that a special contract for their shipment was entered into by and between plaintiff and defendant whereby the defendant agreed to carry the cattle at a reduced freight rate, in consideration of which appellant agreed, "that in the event of any unusual delay or detention of said cattle, while on said trip, from any cause whatever, said plaintiff agreed to accept as full compensation for all loss or damage sustained in consequence of such delay, the amount actually expended by him in the purchase of food and water for the cattle aforesaid. .

"Further answering, defendant says that in consideration of said reduced rate, and of the execution of said special contract, it was expressly agreed by and between the parties to said agreement, that defendant should not be responsible for any loss, damage or injury which might happen to said catte or be sustained by them while being loaded, forwarded or unloaded."

Defendant further pleaded the Interstate Commerce Act and various amendments thereto, and alleged a compliance on its part with all the terms of the interstate commerce law and averred that the shipment of defendant's cattle was an interstate shipment and that the contract of shipment was governed by the interstate commerce law. The waybill shows the estimated weight of the forty-three cattle was twenty-two thousand pounds, that the rate was eleven cents per hundred pounds and the aggregate freight charges were eighteen dollars and fifteen cents, and one dollar additional for bedding placed in the car, making an aggregate charge against plaintiff of nineteen dollars and fifteen cents.

The twelfth clause of the contract of shipment is as follows:

"It is hereby agreed that the weight above specified for each animal to be shipped under this contract is fixed, not as the actual weight, but as the basis for computing the freight charges thereof and the extent of the liability of said party of the first part in accordance with the valuation printed on the back of this contract."

It was shown that the schedule rate for carrying cattle between East St. Louis, St. Louis and Benton City is eleven cents per hundred pounds, that this rate had been agreed upon by the Wabash railroad and twenty-one other railroads entering St. Louis and East St. Louis, and had been approved by the Interstate Commerce Commission and duly posted and published, as required by the interstate commerce law. The way-bill shows on its face that twenty-five per cent of the regular schedule rate was deducted, that plaintiff was required to pay but eighteen dollars and fifteen cents for the carriage of his cattle, instead of twenty-four dollars and twenty cents, the regular schedule rate. Plaintiff testified that the regular rate was eleven cents per hundred pounds and that he got twenty-five per cent discount from the regular rate in his contract. But the defendant rendered respondent a bill of twenty-seven dollars and fifteen cents for transporting his cattle from East St. Louis to Benton City which, on demand, plaintiff paid. This bill was made up of the following items: First, the agreed freight, eighteen dollars and fifteen cents: second, bedding for car, one dollar; third, extra trip made by the Terminal Company, eight dollars. It is shown by the evidence that the Wabash Company paid the Terminal Company eight dollars extra for the first trip in bringing the cattle from East St. Louis to Grand avenue, St. Louis. As shown by the contract of shipment, the plaintiff had nothing to do with the Terminal Company, his contract was with the Wabash Com-

pany alone. The latter company received the cattle at the National Stock Yards and agreed to carry them from that point to Benton City for eighteen dollars and fifteen cents. It was the Wabash Company that employed the Terminal Company to carry the cattle across the river to Grand avenue, St. Louis. In the preformance of this service the Terminal Company was the agent of the defendant and it is as liable for the negligence, if any, of the Terminal Company as if it owned the whole line. Landa v. Holck & Co., 129 Mo. 663; O'Connor v. Railway, 111 Mo. 185. And when it paid the extra eight dollars to the Terminal Company it paid out money for services which it was bound to render without extra charge and when it demanded and received an extra charge from plaintiff, it committed a breach of its contract to carry the cattle for eighteen dollars and fifteen cents. Having thus breached its contract, it is in no position to insist upon its enforcement against the plaintiff and, whether or not the plaintiff agreed by the contract to stand the loss of any shrinkage occasioned by the delay in the transportation of his cattle, the defendant is in no position to enforce that stipulation of the contract, but is liable on account of its own violation of the contract, as at common law, for any damage to the cattle caused by any negligent delay in their shipment.

The plaintiff testified that he bought the cattle to sell to feeders in his neighborhood and estimated the amount of shrinkage caused by the delay in the shipment.

The court instructed the jury, in substance, to find for plaintiff if they believe from the evidence that the defendant negligently delayed the shipment; and on the measure of damages instructed the jury as follows:

"If you find for the plaintiff you will allow him such sum as you may believe he paid out in excess of the usual freight charges on such a car of cattle from National Stock Yards, Illinois, to Benton City, Mis-

souri; also such sum as you may believe from the evidence plaintiff had to pay out for extra feed because of any unusual delay in shipping; and if you believe from the evidence that the cattle shrunk in weight, or were lessened in value on account of the delay, you will allow plaintiff as his damages such sum as you may find from the evidence equals the difference, if any, between the value of said cattle in the condition they were in when delivered at Benton City, after being delayed, and their value had they been delivered to Benton City without delay."

The appellant offered an instruction that the measure of damages was nine dollars and fifty cents, the excess paid by plaintiff over and above the contract price for the shipment. This instruction, the court refused. In view of the evidence, that defendant violated the shipping contract by charging and collecting an excessive freight rate, we think the instruction given for plaintiff properly declared the defendant's liability as at common law, and the court was justified in refusing the defendant's instruction on the measure of damages as the evidence did not warrant it. The plaintiff's instruction on the measure of damages is challenged on the ground that under the evidence the damages, if any, were too speculative and uncertain to be susceptible of ascertainment.

The cattle were not weighed when loaded into the car nor immediately after their arrival at Benton City. The evidence of plaintiff on this feature of the case is as follows:

"Q. Now, you have been dealing in cattle? A. Yes, sir.

"Q. As you say, for a considerable length of time; what condition were those cattle in when they arrived at Benton City? A. Well, they looked pretty bad.

"Q. Well, in what way did they look bad? A. They looked mighty gaunt and bad, and had been ham-

mered around the car so much and had shrunk a good deal.

"Q. I will get you to state if you know, what, if any, extra shrinkage these cattle suffered more than they would have suffered if they had been shipped within the ordinary time? A. I expect about thirty or thirty-five pounds.

"Q. Thirty or thirty-five pounds apiece, and there was forty-three in number? A. Yes, sir.

"Q. Besides shrinkage, in what other way were they injured? A. Well, the cattle didn't do much good for a good while and I never showed them for two or three weeks, and didn't get to sell them and the market went down against me.

"Q. When you bought them in St. Louis and put them in that car for shipment I will get you to state whether they were in a salable condition or not? A. Yes, sir.

"Q. When they arrived in Benton City, the morning of the fifteenth, state whether they were in a salable condition? A. No, sir, they were not."

He further testified that the market price of such cattle in good condition at the time of the arrival of the shipment was from $4 to $4.10 per hundred pounds; that some of the cattle came into the National Stock Yards the day he purchased them and some arrived the preceding day; that some were shipped from Iowa and others from Illinois; that he paid three dollars and sixty cents per hundred pounds for them and they averaged about five hundred and thirty pounds. This evidence shows that the cattle were purchased for the purpose of resale and for profit, and that they could have been resold at a profit on their arrival at Benton City had they been in a salable condition; that in the opinion of plaintiff, an experienced cattleman, the twenty-four hours delay in the shipment, and the extra unloading

and reloading of them had caused them to shrink in weight.

In Dart v. Laimbeer, 107 N. Y. 669, it is said: "Courts ought not to be too precise and exacting in regard to the evidence upon which to base a claim for damages resulting from loss of future profits." Damages in this character of cases (for loss of profits) are scarcely ever susceptible of exact proof. They are to be arrived at from facts and circumstances characterizing the transaction out of which they accrued, and if the evidence is such as will enable a jury to make a fair and reasonable estimate of them, the court should give it the opportunity to make the assessment under appropriate instructions. The jury assessed the plaintiff's damages at sixty dollars, not an extraordinary or extravagant sum, but one which we think is supported by the evidence. The other assignments of error, in the refusal by the court to give other instructions asked by defendant, are answered by the views herein expressed. Discovering no reversible error in the record the judgment is affirmed. *Reyburn* and *Goode, JJ.*, concur.