Roberts et at. vs. Jacks.

## ROBERTS et al. vs. JACKS.

1. LIEN NOT ASSIGNABLE:
   A lien is neither property or a debt, but a right to have satisfaction for a debt out of property, and is not the subject of sale or assignment.
2. ————: *By contract.*
   The following clause in a note, executed for the rent of land, viz: "This note constitutes a lien upon the cotton and corn raised upon said land this year," does not create a lien upon the crop, it is merely a declaration as to the legal effect of the note.
3. ————: *Rent note.*
   No lien attaches to a note executed for the rent of land; the fact that it is given for rent adds nothing to its legal effect.
4. ————: *An unplanted crop for rent.*
   A contract for a lien on a crop to be planted, to secure the rent of the land, is void at law, but after the crop has matured may be enforced in equity.
5. ASSIGNMENT:
   The assignee of a note acquires an absolute title to the debt, and the exclusive right of action thereon.

6. —————:   *As collateral security, does not carry landlord's lien*
The assignment of a note executed for the rent of land as collateral secu-
rity, does not confer the landlord's lien upon the assignee, or entitle him
to attach the crop raised on the land, for the debt.

7. *Transfer of cause to equity docket.*
The mere transfer of a cause from the law to the equity docket does not
constitute it an equitable cause of action. It simply enables the plaintiff
to present a cause for equitable relief.

8. RIGHT OF ACTION: *By assignor in proceeding to enforce lien, etc.*
Where a note, which is a lien on property, is assigned as collateral security
for a debt, the assignor cannot maintain a proceeding in equity to enforce
the lien.

APPEAL from *Phillips* Circuit Court.

Hon. M. L. MANGUM, Special Judge.

*Palmer*, for appellants.

*Tappan & Hornor, contra.*

WALKER, J.:

Thomas Jacks brought an action of debt under the Code form
upon the following instrument of writing:

PHILLIPS COUNTY, *January 4, 1872.*

On the first day of November next I promise to pay to the
order of Joseph W. Nevill, $990 for rent of land on said Nevill's
plantation; this note constitutes a lien upon all the cotton and
corn raised upon said land this year.

[Signed]                        JAS. P. ROBERTS.   [SEAL.]

Which note was endorsed:

Pay to T. M. Jacks.

[Signed]                                    J. W. NEVILL.

With the further endorsement thereon:

"I hereby waive notice and protest, and will still be bound as
endorser on this note.   October 31, 1872.

[Signed]                                   J. W. NEVILL."

The action is brought in the name of Jacks as assignee against
Roberts.   The allegation in the declaration is, "that Joseph W

Nevill assigned and transferred said note to the plaintiff as security for a debt which he then owed plaintiff." Several credits were entered on the note, and the following affidavit filed:

"Thomas Jacks being duly sworn, says on oath that the facts set forth in the foregoing complaint are true, and that the sum of $691.32-100 are now due him for rent, etc.," and that defendant James P. Roberts has removed from said plantation a part of the crop grown thereon during the year 1872, without his consent, and that he has a lien on said crop to secure the payment of said rent, etc.

Upon the filing of the complaint, and this affidavit, a writ of attachment issued against the defendant, to attach the crop of cotton grown on the plantation, was levied upon the cotton, and a bond entered into by Roberts with Charles Wooten, as his security, conditioned that Roberts should perform the judgment of the court in said suit, or that said Wooten would have the seven bales of cotton attached, or its value, $525, forthcoming, and subject to the order of the court, for the satisfaction, etc. This bond was given to Jacks.

After these proceedings the defendant appeared and filed his motion to dissolve the attachment, because the action is brought to enforce a landlord's lien for rent by an assignee of the note, and because the lien is personal and cannot be assigned, and that the affidavit is not sufficient.

This motion was by the court overruled, and, at the instance of plaintiff, the case was transferred to the equity docket and continued.

It will, at this point, be well to consider whether the plaintiff, as assignee, held a lien upon the defendant's crop of cotton, and a right to attach it, because, if he had no lien, the attachment should have been dissolved.

As a general rule it is well settled by this court that the transfer of the debt by assignment does not carry with it the lien which attached to it whilst the note was in the hands of the payee. *Moore & Cail* v. *Anders*, 14 Ark., 628; *Turner et al.* v. *Hornor, adm'r.*, 29 Ark., 440; *Bernays* v. *Feild & Dolly*, id., 218; *Williams* v. *Chrisman*, 23 Ark., 255, as well as several other cases hold this to be the effect of the assignment, unless in a few cases which we will refer to in another connection.

In most of the cases referred to above, the lien was an implied equitable lien upon the property sold to secure the payment of the purchase money, a vendor's lien upon land for the payment of the purchase money. A common law lien is a right in one man to retain that which is in his possession belonging to another until certain demands of him, the person in possession are satisfied. The lien is founded upon the idea of possession, and attaches exclusively to personal property. Bispham's Equity, 325.

In the case under consideration, the debt was not contracted for lands, but in consideration of a contract of rent, a future use of lands, and there was no lien, either express or implied, which attached to the debt, or the property contracted for, but after making the agreement to pay a certain sum of money, a memorandum is added, in the following language: "This note constitutes a lien upon all cotton and corn raised upon said land this year."

It is claimed by plaintiff that this is a contract for a lien. What are the legal or the equitable rights which arise out of this declaration as to lien? It is certainly not a contract, no undertaking or agreement to do, or forbear doing anything, but simply a declaration of the effect of a contract made, a contract to pay money for the rent of land.

A lien is neither *a jus in re* nor *a jus in rem*, but a charge upon property. It is personal, and gives a right to satisfaction

out of particular property, to the payee, and exists only as between the vendor and vendee. Leading cases in equity, Hare & Wallace's Notes, 1, p. 336.

The lien itself is neither property nor is it a debt, but a right to have satisfaction out of property, to secure the payment of the debt, and is, therefore, not the subject of contract or sale. We must remember that the contract for the payment of the money for the consideration of rent, is distinct and independent of the recital, which declares that the note constitutes a lien not upon the use of the land, the thing contracted, but upon the property, cotton and corn of defendant, to be grown upon the land.

There is no connection between the crop to be raised and the consideration for which the note was given. It is, therefore, not a lien upon property sold, but upon other and different property. There is, therefore, no such connection between the consideration for which the note was given, and the crop to be raised, as to create a vendor's lien, and if it had been the intention of the parties to secure the payment of the note by taking a lien upon property, there should have been a contract to that effect.

In the case of *Bennett et al.* v. *Mason et al.*, 7 Ark., 253, Bennett, Reed and Lewis sold Willett Wyman a steamboat; part of the purchase money was paid, and notes given for the payment of the residue of the purchase money, in which the following statement in the contract appears: " And the said Bennett, Reed and Lewis are to retain a lien on said steamboat, Lady Morgan, until the above notes are discharged."

The court, when passing upon the legal effect of this clause, said: " It is true that in the bill of sale plaintiffs say that they are to retain a lien upon the boat until the notes are discharged, but this is a mere suggestion; is no stipulation, and is nugatory."

This is a much stronger case than the one now under consideration; in that it was an attempt to reserve a lien upon the property sold to secure the payment of the balance of the purchase money, but in this to set up a claim to a lien upon other property. Let us suppose that the words " for rent of land on the Nevill place" had not been inserted in the note, and the statement had followed: this note constitutes a lien, etc.; the mere declaration that such was the case would not have made it a lien, or have added in anywise to its legal effect. The fact that the note was given for rent adds nothing to the legal obligation of it, a mere consideration to uphold the contract.

After the most careful consideration, and keeping in mind all of the equities which could arise upon a liberal construction of this clause, we are of opinion that it was not a contract for a lien which attached to the note.

But should we be mistaken in thus holding, it is evident that at the time the contract was entered into, there was no crop planted; no cotton and corn grown upon the place; nothing to which the lien could attach, and that the contract was, for that reason, at law void. *Apperson* v. *Moore*, 30 Ark., 56; *Driver* v. *Jenkins*, 120 id.; *Alexander* v. *Pardue*, 359 id.; and *Hamlett* v. *Talman & Graves*, 505 id., as well as several later decisions, settle this question. But they also hold that after the crop has matured; after property, in fact, exists, an equitable lien may be declared and enforced for the satisfaction of the debt, with regard to which we will in the further investigation as to the equitable rights of the several parties make reference.

We have seen that Jacks, as assignee of Nevill, has brought his action at law, and claims to be the legal owner of the debt, and of an equitable lien upon the cotton grown upon Nevill's plantation for its payment.

The note appears to have been assigned in the usual form, and purports to convey the legal title to the debt, and according to our decision in *Block* v. *Walker*, 2 Ark., 4, gave to Jacks an absolute title to the debt, and the exclusive right to sue upon it. This decision has been long held by this court as settling the legal effect of assignment of notes or bonds given in the ordinary course of business.

But, in several of our later decisions, we have taken a distinction between such assignments and those where the note or bond is assigned merely for the purpose of having the debt collected; or where the note is assigned and placed in the hands of a third person as a collateral security for the payment of a debt. In *Dickinson et al.* v. *Burr*, 15 Ark., 372, it was held that the assignment of a note to an agent for collection, should the note not be collected, and be returned to the assignee, he may strike out the assignment, and sue in his own name, overruling so much of the case of *Block* v. *Walker* as held that he could only acquire title by a re-assignment of the note to him.

In the case of *Crawley* v. *Riggs*, 24 Ark., 563, where the notes were assigned as collateral security, it was held, that under the peculiar equitable circumstances of the case, the vendor's lien followed the notes into the hands of the assignee. The suit was brought in equity by the assignee to enforce a vendor's lien upon the lands for the payment of the purchase money. The allegations were, that Riggs was indebted to W. G. Crawley for a tract of land, the payment of the purchase money secured by note; that W. G. Crawley assigned the notes to J. F. Crawley, and that they were a lien upon the land; that Riggs sold the land to Harris, and took notes from him for the purchase money; that, as an inducement to Crawley to make to him (Riggs) a deed for the land, he assigned to him the notes taken of Harris as collateral

security. The suit was brought by an assignee to enforce a vendor's lien upon the lands, for the payment of which the notes were given.

Judge Clendenin, who delivered the opinion of the court, said: "The question then arises, the lien being perfect in Riggs, could he, by assignment of the notes for the purchase money, assign the lien held by the vendor." After referring to decisions in which it was held that, by force of the assignment of the debt, the lien was lost, the judge refers to the case of *Moore & Cail* v. *Anders*, 14 Ark., in which Chief Justice Watkins held that the weight of authorities was, that the equitable vendor's lien was personal to him, and is not, unless under peculiar equitable circumstances, assignable, and lays hold of this remark of Judge Watkins, which merely assumes the possibility of a case of exception to the settled rule, that the lien was personal, and only attached to the debt while in the hands of the payee, and did not follow it in the hands of the assignee, and decided that, as the note was assigned as a collateral security, the assignee should be subrogated to the rights of the assignor.

In a still later case, *Carlton* v. *Buckner*, 28 Ark., 66, the case of *Crawley* v. *Riggs* was cited with approbation, the notes were assigned as collateral security, and the suit maintained by the assignee.

At this point it may be well to consider what these rights were. The legal title to the debt had passed by the assignment to the assignee. Such must be its effect in law, or the case *Block* v. *Walker* cannot stand. The legal title cannot remain part in one and part in the other; it either passes, or does not pass, by the assignment. The judge was commenting upon the decision in the case of *Moore & Cail* v. *Anders*, in which it was held, that " by force of the assignment, the lien was lost; that it was personal. It was, therefore, the lien right of the assignee to unite in him a debt, and a lien upon property for its payment.

The case of *Dickinson* v. *Burr* cannot be relied upon in support of this decision; it rests upon the distinct ground, that the note was endorsed to the cashier of the bank, and left there merely for collection; that the bank had no interest in it, and when not collected, was returned to Burr, who struck out the endorsement of the bank, and took an assignment of the note from Ringgold; that, in effect, it was not an assignment, but a mere power to collect; that the debt was all the while " Burr's."

In the case of *Crawley* v. *Riggs*, the notes were assigned to plaintiff " Crawley " as collateral security to pay a debt due to him. It was not claimed that the legal title to the debt was not in the assignee, but that he should be subrogated to the rights of the assignee, which were but a lien interest.

The decision in the latter case, in which it would seem that the outstanding lien in the assignor, which did not pass by force of the assignment, should be held as subrogated to the assignee, so as to unite the debt and the lien in the same party, which is held, in the case of *Bernays* v. *Feild and Dolly*, to be necessary, is not free from doubt, and, so far as regards the case made by Jacks, need not be considered. He has brought no suit in equity, but his action is strictly at law, according to the pleading.

It is true, that upon his own motion the case was transferred to the equity docket, but the mere act of transferring the case to that docket did not make it an equitable cause of action; the change is made to enable the plaintiff to present a cause for equitable relief.

Sec. 4461 Gantt's Digest provides, that " An error of the plaintiff as to the kind of proceeding adopted shall not cause the abatement or dismissal of the action, but merely a change into the proper proceedings by an amendment in the pleading and the transfer of the action to the proper docket."

No amendment was made in the pleadings, no allegations setting forth the facts which entitle him to relief in equity. The original declaration in the action at law remained just as when filed.

The substance of the complaint is, that Roberts executed his note to Nevill for $990 for the rent of land for the year 1872, in which it was stated that the note should constitute a lien upon the crop of corn and cotton raised that year upon the land; that Nevill assigned the note to Jacks as security for a debt which Nevill owed Jacks; that several payments were made; that there is a balance due on the note, for which he prays judgment. This is the whole case made by the pleading. If what is stated is true, he was entitled to a judgment at law for his debt; and, whether the debt was assigned as security for the payment of the debt due by Nevill to Jacks or not, could not affect the right to recover, nor give another right.

The proceedings to authorize an attachment is no part of the pleadings in the case; no issue can be taken upon them; they were made to enable the plaintiff to sue out summary process. No issue was taken on the declaration, no evidence, no allegation to be proven.

We need pursue this branch of the case no further, but will turn our attention to the case presented by Nevill, who, by leave of the court, was permitted to file his complaint in equity, in which he makes both Roberts and Jacks defendants.

Roberts answered the complaint of Nevill; evidence was taken to sustain the issue between them. But Jacks makes no answer, no defense. Before Roberts answered, he demurred to Nevill's bill, by which the sufficiency of the bill was put in issue, the demurrer was overruled, and Roberts excepted.

The allegations having been admitted by the demurrer, the question is, were they sufficient to entitle Nevill to relief, without referring at length to the allegations in Nevill's bill. It is

certainly necessary, in order to entitle him to equitable relief, that he should distinctly allege, and show by his pleadings, that he was the legal owner of the debt, and had an equitable lien upon the cotton of the defendant, not as landlord, or that he has a landlord's lien, for that question was not presented for our consideration, but that by force of his debt and the recitals in the note he has a lien by contract.

As regards the debt, he admits that he assigned the note to Jacks, but endeavors to avoid the legal effect of the assignment, by an averment that the note was assigned and placed in the hands of Jacks as collateral security to pay a debt which he owed Jacks, and his counsel relies upon the case of *Crowley* v. *Riggs* to take the case out of the rule laid down in *Block* v. *Walker*. But by reference to the case it will be found that Crowley, the assignee, and not Riggs, the assignor, brought his suit in equity, and the equitable lien supposed to be vested in Riggs, was, by subrogation, vested in Crowley, the assignee, to enable him to maintain his claim to the lien. The court does not hold that the assignor held the legal title, notwithstanding his assignment, but that the assignee, by su'.rogation, held the lien; so that, in fact, so far from Nevill's showing that he had the legal title to the note, he shows that, in fact, he has no such title.

We have already disposed of the question of lien by contract; there was no contract, not only because there was at the time the contract was entered into no property, nothing to which the lien could attach, but also because no contract was in fact made; the statement at the foot of the note was no contract for a lien upon property, but merely a declaration as to the effect of the note.

Thus considered, we must hold that the demurrer should have been sustained. This disposes of the case. It is unnecessary to

look into the issue formed between Nevill and Roberts, or the evidence offered to sustain it.

In the progress of the case it was sometimes stated to be a case in favor of *Jacks* v. *Roberts,* then *Jacks* and *Nevill* v. *Roberts,* and then again *Nevill* v. *Jacks & Roberts,* and, as last stated, it progressed until the issue was formed, and the case set for hearing, where upon its own motion the court transferred the case back to the common law docket, where it was heard, and a judgment was rendered in favor of Jacks, which, upon motion for a new trial, was set aside, and a new trial granted.

The court then, upon its own motion, reconsidered its judgment in favor of Jacks, in the trial at law, ordered the case to be again docketed on the chancery docket, and again found the issues in favor of Jacks, who had made no issue with any one, and rendered judgment for the debt in the declaration mentioned, against the defendant Roberts, and against Charles Wooten the security upon the bond given by the defendant to release the cotton from attachment.

That such proceedings are without precedent, and irregular is too manifestly clear, to require more than a statement of the facts.

Under the state of case presented, Jacks was clearly not entitled to judgment; there was no issue taken in the action at law. The proceedings in the common law court were not referred to, or made part of the case presented by Nevill. The case was heard in equity upon the issue formed between Nevill and Roberts, a case which, by Jacks failing to answer, stood confessed as to him, and yet judgment was rendered in his favor.

The judgment and proceedings in the court below must be set aside and reversed, and the cause remanded with instructions to dismiss the bill presented by Nevill; that the case be reinstated

upon the common law docket with instructions to sustain the motion to dissolve the attachment and release the property attached, with leave to Roberts to file an answer to the complaint, that the case may proceed to hearing and final judgment.