HOWELL *v*. CRAWFORD.

Opinion delivered October 28, 1905.

FRAUDULENT CONVEYANCE—PURCHASE BY INSOLVENT CORPORATION OF ITS STOCK.—A transfer by an insolvent corporation of a material part of

its assets to one of its stockholders in payment of his stock in such company is a fraud upon its creditors.

Appeal from Nevada Chancery Court; JAMES D. SHAVER, Chancellor.

Suit in chancery by Thomas J. Stewart against the Longview Lumber Company and Wm. M. Howell. Plaintiff recovered judgment, and defendant Howell appealed. Pending the appeal Stewart died, and the cause was revived in the name of John H. Crawford, as his administrator.

Affirmed.

*Thomas C. McRae* and *Rose, Hemingway & Rose,* for appellant.

The mere fact that the buyer is, to his own knowledge, insolvent at the time of purchase is no ground for relief to the seller. Bigelow on Fraud, 484. Nor is it fraud merely to fail to disclose insolvency, if no inquiry is made as to financial condition. 14 Am. & Eng. Enc. Law, 80.

*C. C. Hamby* and *W. V. Tompkins,* for appellee.

The transaction between the lumber company and the appellant, a stockholder therein, whereby the company, being insolvent, transferred to the appellant a material part of its property in payment of his stock in such company was a fraud upon the rights of its creditors. 2 Thomp. Corp. § 2054; *Ib.* § 2057; 3 Thomp. Corp. § 2954; *Ib.* 2957; 10 Ch. Div. 118, 127; 40 La. Ann. 53.

RIDDICK, J. In June, 1902, Thomas J. Stewart was the owner of a sawmill and other machinery connected therewith. He sold this property to the Longview Lumber Company, a corporation doing business at Prescott, Ark., for the sum of $2,000, and took the notes of the company therefor. Shortly afterwards Stewart sold the same company certain mules, horses, and wagons for the sum of $800, and took the notes of the company for the price thereof. The company at once sold this property to Wm. M. Howell, who had been connected with the company as secretary, and who, in connection with his brother, George Howell, president of the company, represented the company in making the purchase from Stewart. Some four or five months afterwards the company failed and quit business, without paying any part of

.its debt to Stewart, and leaving a large part of its other debts unpaid.

Stewart brought this action in equity against Wm. M. Howell and the Lumber Company, alleging that the sale of the property to Howell was fraudulent, and asking that he have judgment against the company for his debt, and that the property be sold and proceeds applied to the payment of the judgment.

The property was attached and sold under an order of the judge in vacation. On the hearing the chancellor found in favor of the plaintiff, and gave a decree accordingly.

The appeal of Howell brings before us for decision the question whether the sale of the property by the lumber company to Howell was fraudulent and void as to creditors. We may say at the outset that the contention of Stewart that this transfer was made to defeat his vendor's lien upon the property is not sound, for the reason that he had no such lien. Stewart did not reserve any lien upon this property, and our statute gives the vendor of personal property no lien upon the property for the payment of the purchase price. The statute, it is true, does not permit the vendee to claim such property as exempt against an execution issued on a judgment in favor of the vendor for the purchase money. But that provision of the law creates no lien, and, if the company had continued to own this property until its failure, plaintiff would have had no more right against it than any other creditor of the company.

Plaintiff's right to question this transfer by the company to Howell does not rest on the fact that he sold this property to the company, but on the fact that he is a creditor of the company, and that the company cannot dispose of its property in fraud of its creditors. The question, then, as before stated, is, was this transfer void as to creditors? At the time this purchase was made by the company from Stewart, the company was in failing circumstances, heavily in debt and on the verge of insolvency, if not actually insolvent. At the time this purchase was made George Howell was the president of the company, and had been so since its organization. The defendant Wm. M. Howell had been its secretary, with a salary of three thousand dollars; and, though there is conflict in the evidence on this point, we think that it

shows that he was also a stockholder in the company. Counsel contend with much force that the books support the testimony of defendant that he was not a stockholder, for the reason that they do not show any receipt from him for the stock which a memorandum on the book states was issued in his name. But the same thing might be said of the other stockholders; and if that argument was sound, then there were no stockholders in this company. The testimony of the president, his brother, is direct and positive that Wm. Howell was a stockholder, and that this property was turned over to him in part liquidation of his interest in the company. We do not agree with counsel that the testimony of this witness shows animosity towards the defendant, his brother. On the contrary, the answer he filed as president of the company and his testimony convince us that he was willing to shield his brother, as far as the truth would permit. His testimony is supported by the testimony of Mr. Greeson, the attorney of the company, and by the fact that his brother, the defendant, was secretary of the company with a salary of three thousand per annum. The defendant himself admitted that this position could be filled only by a stockholder, and in order to avoid the force of this admission stated that he was only acting secretary. But the testimony shows to the contrary, that he was elected secretary, and entered upon and continued to discharge the duties of the office up to the time of this purchase. The evidence shows that before this purchase some friction had developed between these two brothers, and some difference of opinion existed between them as to the management of the company. As a result thereof, it was agreed between them that Wm. Howell should retire, and that the company would pay him for his interest in the company. But the company was badly in debt, and had no money. To avoid this difficulty, it was agreed between the two brothers that the company would purchase the mill property and stock from Stewart, and turn it over to Wm. Howell in payment *pro tanto* for his interest in the company, or, to use the expression of George Howell, "to liquidate the stock interest of Wm. Howell in the company."

At the time this was done the company, though a going concern, was, as before stated, either insolvent or on the verge

of insolvency. A few months afterwards it failed, leaving debts amounting to many times more than the value of its assets. Under such circumstances it is very clear that the company had no right, as against its creditors, to turn over its assets to one of its stockholders in that way. The company did business and secured credit on the basis of the property which it owned. It, in effect, represented to its creditors that this property would be used to pay the debts of the company. It is, as remarked by Sir George Jessel, M. R., wholly inconsistent with this representation that it should turn its property over to its stockholders and pay the creditors nothing. In re *National Funds Assurance Company,* 10 Ch. Div. 118-127; Thompson on Corp. § 2054.

If the company had kept this property which it purchased from Stewart, or if it had sold it for a valuable consideration, Stewart would have had no right to complain. But when it sold it to one of its stockholders in payment for his stock in the company, which was at the time worthless, it, so far as the creditors were concerned, gave away property to which they had the right to look for payment of claims against the company, and the transaction was fraudulent and void as to them.

It is said that if that be so the property should pass to the trustee in bankruptcy. That might be true if any such claim had been made by the trustee; but no such issue is presented, and we do not know that any such trustee has been appointed for this company.

On the whole case, we are of the opinion that the judgment should be affirmed, and it is so ordered.