### BELCHER *v.* WINTER.

Opinion delivered October 3, 1921.

MORTGAGES—CROP TO BE GROWN BY MORTGAGOR.—A mortgage on the crop of cotton which the mortgagor will cultivate and agrees to cultivate on the mortgagor's farm did not give the mortgagee any lien on cotton grown on such farm by tenants of the mortgagor who paid their rent in money, and not by sharing their crops, as the landlord had no title to such crops, but merely a lien thereon.

Appeal from St. Francis Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

*B. J. Semmes,* for appellants.

Winter's interest in the crop, being that of a landlord who furnishes and supplies his tenants who work the land, was expressly conveyed in the chattel mortgage, whereby he conveyed all his "right, title, claim and interest" in the crop. 80 Ark. 431. He intended to convey a lien on the 1920 crop on the Gray place, and this lien attached when the crop came into existence. 52 Ark. 439. The mortgage was in existence and on record before Winters delivered the rent notes to the bank. The facts differentiate this case from cases relied on by appellee, viz: 33 Ark. 737, and 37 *Id.* 43. Assignment of a rent note does not carry with it the landlord's lien. 61 Ark. 266; 39 *Id.* 344; 37 *Id.* 43; 31 *Id.* 597.

*Mann & Mann,* for appellees.

1. The chattel mortgage does not cover the cotton involved in this suit. Where a mortgage purports to cover crops to be grown by the mortgagor, it will not include the crops grown by his tenants or other persons. 11 Corpus Juris, 505.

2. The lien of appellants under the mortgage is not superior to the rights of appellees in the cotton in controversy. The bank being the holder of the rent notes, the tenants were within their rights in seeing that the cotton or its proceeds was applied to the payment thereof. 123 Ark. 528; 52 *Id.* 58; 37 *Id.* 43.

WOOD, J. On April 1, 1920, W. A. Winters was indebted to Crutcher & Company in the sum of $4500, evidenced ·by promissory note of that date, due November 1, 1920, and secured by a mortgage executed on the 8th day of April, 1920, in which the property mortgaged is described as ''all their right, title, claim and interest in the entire crops of cotton, cotton seed, and corn, which the party of the first part (Winter) will ·cultivate, and agrees to cultivate and produce, during this year on what is known as the Walter Gray place farms, or elsewhere in the county and State aforesaid.'' Winter owned what is known as the Walter Gray place farms in St. Francis county. Winter leased these farms to negro tenants for the year 1920 and took their notes for their rents, amounting in the aggregate to $2,800. Winter furnished to these tenants in the aggregate more than $4000 to enable them to make and gather crops. Winter was indebted to the First National Bank in a sum in excess of $6000, secured by a deed of trust on certain lands and by mortgage on chattels.

On the 30th day of November, 1920, Winter deposited the rent notes mentioned above with the First National Bank as collateral security for his indebtedness to the bank. This was in addition to the other security which he had given the bank. At the time he deposited these notes as collateral, he did not obtain from the bank any more money or additional consideration. On the first day of December, 1920, Winter delivered to the First National Bank ten bales of cotton which had been grown by his tenants on the Walter Gray place farms.

This suit was begun by a complaint in equity filed by Crutcher & Company, and at their instance an attachment was issued and levied upon the ten bales of cotton which had been delivered to the First National Bank. Crutcher & Company alleged that they had a lien on the cotton by virtue of the chattel mortgage executed by Winter to them, and the First National Bank alleged that it had a right to the cotton because same had been delivered to them by Winter on the notes of his tenants which Winter had deposited with it as collateral. At the time the bank accepted these notes as collateral, it knew of the existence of the chattel mortgage which Winter had executed to Crutcher & Company. Before the attachment issued, the First National Bank had sold the cotton, and had received therefor the sum of $641.62.

The above are the facts upon which the trial court rendered a judgment in favor of the appellees, from which the appellants prosecute this appeal.

The decree of the court was correct. The language of the mortgage is: "The party of the first part (Winter) has bargained, granted and sold, and does by these presents bargain, grant and sell to said party of the second part (Crutcher & Company) their heirs, administartors and assigns, all their (his) right, title and interest in the entire crops of cotton, cotton seed and corn, which the party of the first part (Winter) will cultivate and agrees to cultivate and produce during this year on what is known as the Walter Gray place farms in the county and State aforesaid."

The above language is not sufficient to create in favor of the appellants any lien on the cotton in controversy. For this cotton was cultivated and produced by the tenants of Winter and not by Winter himself. But the language of the mortgage only conveyed to Crutcher & Company "all the right, title, claim and interest in the crops of cotton" which Winter himself "will cultivate and agrees to cultivate and produce" on the farms mentioned. Winter had no right, title, claim and interest

in and to the crops of cotton grown on his farms by his tenants. These tenants were not share-croppers. They paid their rent in money, and not by sharing their crops with Winter. True, Winter, as the landlord, had a lien on the cotton grown on the farms during the year 1920 for the rent and supplies furnished the tenants by him for that year. Sections 6889, 6890, C. & M. Digest. But such lien did not give Winter any right, title, claim and interest in the cotton itself grown on his farms by his tenants. The crops grown by Winter's tenants on Winter's farms belonged to the tenants and were only subject to his lien for rents and supplies which he furnished them.

"A lien is neither property nor a debt, but a right to have satisfaction for a debt out of property, and is not the subject of sale or assignment." *Roberts* v. *Jacks,* 31 Ark. 597. See also *Buckner* v. *McIlroy,* 31 Ark. 631. But, even if it could be said that the language "all right, title, claim and interest" was broad enough to include future cotton afterward grown on Winter's plantations and delivered to him by his tenants, nevertheless such cotton was not conveyed by the mortgage, for the reason that the language, as before stated, only purports to convey to appellants the entire crops of cotton which Winter himself would cultivate and produce. He did not cultivate and did not produce the cotton in controversy.

The case of *Delta Cotton Co.* v. *Ark. Cotton Oil Co.,* 80 Ark. 431, upon which appellants rely, does not sustain their contention. By the language of the mortgage in that case the mortgagor conveyed the "entire crop of cotton, cotton seed and corn *grown* and to be *grown* during the year 1903 on certain described real estate in the county of Jefferson and State of Arkansas." No such language is contained in the clause of the mortgage under review.

In the case of *Blakemore* v. *Eagle,* 73 Ark. 477, the deed of trust described the property conveyed, as fol-

lows: "The entire crop of cotton and corn that I (the mortgagor, Blakemore) may raise or cause to be raised during the year 1898 on my plantation known as the Blakemore place in Lonoke county, etc." In that case Mr. Justice RIDDICK, speaking for the court in construing the above language, expressed the opinion that the cotton delivered to Blakemore by his tenants in the settlement of accounts for supplies furnished by him was not covered by the trust deed. While this language, as the opinion further shows, was not necessary to the decision in that case and was therefore *obiter,* nevertheless it is very persuasive as to the proper construction of such language.

And in the later case of *Delta Cotton Co.* v. *Ark. Cotton Oil Co., supra,* Judge BATTLE, in the concluding part of his opinion, expressed the view that the court in *Blakemore* v. *Eagle, supra,* was of the opinion that the language of the deed of trust in that case was not sufficient to cover cotton raised and cultivated during the year by the tenants on the plantation of the mortgagor (Blakemore), and the court in making the distinction between the cases of *Delta Cotton Co.* v. *Ark. Cotton Oil Co.* and *Blakemore* v. *Eagle,* recognized that the latter case decided that the language therein contained was not sufficient to cover cotton raised by tenants on the plantation of the mortgagor. So we feel that our opinion and judgment in the case at bar is fortified by the opinions of two former very able judges of our court.

In 11 Corpus Juris, § 178 (3), p. 505, the following language is used by the authors of the text: "As a general rule, where the mortgage purports to cover crops to be grown by the mortgagor, it will not include crops grown by his tenants, or other persons, but will cover the crops grown by him on the land designated. * * * But a mortgage on crops to be grown during a certain year on certain lands will include crops grown on the premises by tenants and share-croppers of the mortgagor."

Several cases are cited to support the first part of the text, and, to support the latter part of the text, our own case of *Delta Cotton Co.* v. *Arkansas Cotton Oil Co.*, *supra,* is cited.

We conclude that there was no error in the decree of the court, and the same is therefore affirmed.