MARKLAND v. MERCHANTS' & FARMERS' BANK.

Opinion delivered January 17, 1927.

1. SALES—VENDOR'S LIEN.—A lien for the purchase price of personal property must be actually reserved in order to give the vendor a lien thereon.

2. SALES—RECITAL OF LIEN.—A statement in a note that it is secured by a vendor's lien on certain personal property amounts to no more than a declaration that a lien existed thereon for the purchase money, and does not authorize the purchaser of the note to foreclose a lien thereon.

3. LANDLORD AND TENANT—RIGHT TO COLLECT RENTS.—The purchaser of a note which recited that it was secured by a vendor's lien on a house on a certain lot could not collect rent after expiration of the vendor's lease of the ground on which the house was situated, and was liable to the owners of the lot for the rents thereafter collected, with interest.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; reversed in part.

*Mahony, Yocum & Saye,* and *J. N. Saye,* for appellant.

*Stewart & Oliver,* for appellee.

HUMPHREYS, J.  Appellee instituted this suit in the Second Division of the Union County Chancery Court against F. M. Cates and one of the appellants, William Markland, to foreclose an alleged vendor's lien for $256.25, with 10 per cent. per annum from April 15, 1920, against a house standing on lot 4, block 2, East Junction City, Arkansas, and for rents in the sum of $150 for the use of same.  The suit was based upon the following note and the indorsement of same before maturity to appellee by the payee therein:

"$256.25          Junction City, Ark. Jan. 15, 1920.

"Ninety (90) days after date, we, or either of us, promise to pay to H. A. Dowdy, or order, two hundred fifty-six and 25/100 dollars.  Payable to the Merchants' & Farmers' Bank, Junction City, Arkansas, for value received, negotiable and payable without defalcation or discount, and bearing interest at the rate of ten per cent. per annum from maturity until paid, and if the interest

be not paid annually, to become as principal and bear same rate of interest. The drawer and indorser severally waive presentation, protest and nonpayment of this note. Secured by a vendor's lien on a house in lot 4, block 2, East Junction City, Ark. If this note has to be collected by an attorney I agree to pay ten per cent. attorney's fees.

"F. M. Cates.

"Due 4-14-20.   No. 6699.

Indorsement on back: "H. A. Dowdy, without recourse."

It was alleged in the complaint that the lot was owned by Frank McQuillan, who leased it to J. C. Moore on May 29, 1913; that, pursuant to authority contained in the lease, J. C. Moore moved the house referred to in the note onto the lot; that, under the terms of the lease, he, or his assigns, had the right to remove the house; that, on March 1, 1924, appellant, William Markland, without right, title or authority, took possession of said house and retained the possession thereof without payment of rent to appellee. The appellant, William Markland, filed an answer, denying the material allegations in the complaint.

No service was had upon F. M. Cates, and he did not enter his appearance.

The heirs of Frank McQuillan, deceased, filed an intervention, adopting the answer of William Markland. In addition they set out the lease made by their father to J. C. Moore, which is as follows:

"This contract entered into between Frank McQuillan, as party of the first part, and J. C. Moore, as the party of the second part. Party of the first part hereby agrees to lease to party of the second part a certain tract of land described as follows: Lot 4, block 2, in East Junction City, Ark. This lot being 60 feet running east and west and 100 feet running north and south, and located between lots 3 and 5.

"Party of the second part hereby agrees to improve said lot and pay as rent for said lease the sum of two dollars per month, monthly payments, for a period of five

years. It is further agreed that party of the second part has the option to extend this lease for as long a period at the above stipulated price.

"It is further agreed between the parties of the first part and second part that whatever improvement that party of the second part may place upon said lot shall remain the property of the said J. C. Moore, or to whom he may sell lease, they having the right to move improvement when above contract has been complied with, if party of the first part, Frank McQuillan, does not see fit to buy same, at an agreed price.

"It is further agreed that party of the first part pay taxes on lot and party of the second part pay taxes on improvement placed on lot.

"It is further agreed that, when rent shall be 90 days past due and does not pay upon demand upon him, that this contract shall be null and void, and party of the first part may order premises vacated, and party of the second part has no further claim or protection under this contract."

They also alleged that, at the expiration of the lease, appellee retained possession of the house and collected rents thereon from third parties to the amount of $175, for which they pray judgment against said appellee.

Appellee filed an answer, denying the allegations of the intervention, and, in addition, alleged that the lease contract was extended until June 1, 1923; that, before the expiration of said lease, J. C. Moore sold, transferred and assigned it and the improvements erected and constructed on said lot to the Citizens' Bank of Junction City, Arkansas; that the Citizens' Bank sold and transferred the same to H. A. Dowdy; that Dowdy sold and transferred the same to F. M. Cates; that Cates executed and delivered the note referred to above to Dowdy, and that Dowdy transferred the note to appellee before maturity for a valuable consideration.

The cause was submitted to the court upon the pleadings and testimony adduced by the respective parties, which resulted in a decree dismissing appellee's com-

plaint for the want of equity, and the cross-complaint and intervention of appellants for the same reason, from which both appellants and appellee have prosecuted appeals to this court.

The record reflects, according to the undisputed testimony, that the interveners are the owners, by inheritance, of said lot; that J. C. Moore leased the lot from their father for a term of five years, at $2 per month, with the privilege of renewal, for the purpose of constructing the improvements thereon, with an option to the lessee or his assignees to remove same at the expiration of the lease; that, pursuant to the terms of the lease, J. C. Moore moved the building in question onto the lot, and that he and his assignees retained the possession of the house, but failed to remove same at the expiration of the lease, or at the expiration of the alleged extension thereof; that the only claim that appellee has to the house arises out of the assignment of the $256.25 note assigned to it before maturity, without recourse, by H. A. Dowdy, the payee in the note; that this note was executed to H. A. Dowdy by F. M. Cates in payment of the house; that Dowdy had bought the house from the Citizens' Bank of Junction City, who had theretofore purchased same from J. C. Moore, the original lessee; that the following indorsement appears upon the original lease heretofore set out in this opinion:

"September 1, 1913.

"For value received I hereby transfer all my rights to the within lease and all improvements thereon to the Citizens' Bank, Junction City, Ark.    J. C. Moore.

"Feb. 3, 1919.

"This lease is extended until June 1, 1923.

"William Markland,

"Agent for McQuillan estate."

That William Markland moved into the house between the first of January and last of February, 1924; that, at the time he moved in, the house was occupied by Mr. Batie, a subtenant of R. E. Davis, who had leased the house from appellee; that William Markland moved

in for the purpose of taking possession of the house for the interveners; that he accomplished this purpose, and was in the exclusive possession thereof when this suit was instituted; that, during the time appellee retained possession and control of the house, it collected $90 in rents from Mrs. Earl Bass, at least $60 from B. V. Hunter, $14 from R. E. Davis, and $20 from R. E. Grennen; that this rent, and perhaps more, was collected by appellee without paying ground rent to the interveners or their agent, William Markland.

The record discloses a conflict in the testimony as to whether there ever was a renewal of the lease and the exact date on which the last ground rental was paid to the interveners or their agent. According to a clear preponderance of the testimony, appellee paid no ground rent after it acquired the Cate-Dowdy note between January 15 and April 15, 1920, and it is extremely doubtful whether any one paid ground rent after that time.

The first question arising for determination on this appeal is whether appellee had any lien upon the house by virtue of the Cate-Dowdy note it acquired by purchase. The note recites that it is "secured by a vendor's lien on a house on lot 4, block 2, East Junction City, Ark." This court decided in *Roach* v. *Johnson,* 71 Ark. 344, 74 S. W. 299, that a vendor of personal property has no statutory or equitable lien for the unpaid purchase price; and in *Barnett* v. *Mason,* 7 Ark. 253, and *Peay* v. *Field,* 30 Ark. 600, that a lien upon personal property can be created only by contract; and in *Roberts* v. *Jacks,* 31 Ark. 597, that a mere declaration in a note to the bank that a lien exists upon the property sold for the unpaid purchase price does not, in itself, constitute a contract lien thereon to secure the payment thereof. A lien must actually be reserved upon personal property sold in order to give a vendor thereof a lien thereon to secure the payment of the purchase price. *Howell* v. *Crawford,* 77 Ark. 12, 89 S. W. 1046. The statement in the note in the instant case amounted to no more than a declaration to the effect that

a lien existed on the property for the purchase money, under the rule announced in the cases cited above. It follows therefore that there was no basis upon which appellee could maintain a proceeding in foreclosure to enforce a lien against the house, or to claim rents from the interveners or their agent, on account of his occupancy of the house after the expiration of the lease. The complaint of appellee was properly dismissed for the want of equity.

Appellee had no right to collect rents after the expiration of the lease, and, if same was extended, it had no right to collect rents either after it forfeited its rights under the lease by a failure to pay ground rent to the interveners or their agents, and especially after the expiration of the alleged extension of said lease. As we understand this record, it collected all of the rents it received from third parties, after failing to protect its rights to the possession of the house by payment of ground rents, and collected more rents from the third parties than the amount for which it was sued. The amount of rents claimed by the interveners was $175. The trial court should have rendered judgment in favor of the interveners for that amount, with interest at 6 per cent. per annum from August 1, 1925.

The judgment of the trial court dismissing appellee's complaint for the want of equity is affirmed, and, on account of the error indicated, the judgment of the trial court dismissing appellants' intervention and cross-bill is reversed, and the clerk is directed to enter a judgment here in favor of appellants against appellee for $175, with interest at 6 per cent. per annum from August 1, 1925, until this date, to cover the rents collected by it.